UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHREEJI KRUPA, INC. and SHAURIN B. MEHTA, ) ) ) Plaintiffs, ) ) v. ) ) LEONARDI ENTERPRISES and ) DONNA J. LEONARDI, ) ) Defendants. ) | Case No. 04 C 7809 Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Shreeji Krupa, Inc. ("Krupa") and Shaurin B. Mehta, filed suit against Defendants, Leonardi Enterprises and Donna J. Leonardi. Plaintiffs allege that Defendants violated 42 U.S.C. §§ 1981 and 1982 by refusing to consent to the assignment of the lease because Mehta and the new lessee was of dark skin and Indian ancestry (Counts I and II, respectively), breached Plaintiffs' right to assign the lease (Count III), violated 42 U.S.C. §§ 1981 and 1982 by refusing to extend the lease because of Mehta's race (Counts IV and V, respectively), and breached the option to extend the lease (Count VI). Currently before the Court is Defendants' Motion for Summary Judgment.

## FACTS

Leonardi Enterprises rented certain real estate located at 55 St. John's Court, Highland Park, Illinois, to Mira Grocery in 1997 pursuant to a written lease. The lease provided for a term of five years with an option for an additional five-year term. (Def.'s 56.1(a)(3) Statement ¶ 1). Mira Grocery operated a mini-mart grocery store at the location. (Id., ¶ 2). In May 1997, Mira Grocery sold the assets to Krupa and requested that Leonardi assign the lease to Krupa. Leonardi assigned

the lease to Krupa. The lease provided, in pertinent part, that Krupa could not assign the lease without the consent of Leonardi, "which consent shall not be unreasonably withheld." (Id., ¶ 3).

In 2000, Krupa sought to exercise the lease option to renew the lease for an additional five-year term. At this time, Krupa and Leonardi entered into a Lease Extension and Amendment Agreement ("Amended Agreement"). (Def.'s 56.1(a)(3) Statement ¶ 4). The Amended Agreement provided, in part, "Either party may cancel this lease by giving the other party 60 days written notice to start from the first of the month following delivery of said notice." (Id., ¶ 5)

In 2004, Krupa decided to sell the store assets. In August 2004, Krupa entered into an Asset Purchase Agreement with Alpesh Patel. Patel then entered into discussions with Leonardi regarding the lease. (Def.'s 56.1(a)(3) Statement ¶ 6).

Shaurin Mehta is the sole shareholder of Krupa Mehta was not a contracting party in the assignment of the lease between Krupa and Leonardi, the Amendment Agreement, or the Asset Purchase Agreement between Krupa and Patel. (Def.'s 56.1(a)(3) Statement ¶ 7).

Patel does not "recall" if he saw a copy of the lease or the Amendment Agreement. Patel believed that the minimum acceptable lease term for the store was ten years. (Def.'s 56.1(a)(3) Statement ¶¶ 8-10). Mehta told Patel that the grocery store was doing "pretty well" and "did a good business." (Id., ¶ 13). Mehta showed Patel documents indicating that the store had averaged daily receipts of approximately $1,000 per day in gross receipts. (Id., ¶ 14). Mehta's representations affected Patel's offer to purchase the store. (Id., ¶ 15). The federal income tax returns for Krupa which were prepared and filed by Mehta, show that the store had very small gross sales and lost substantial sums of money every year of operation. (Id., ¶¶ 17-19).

By letter dated April 15, 2005, Leonardi, through its attorneys, notified Krupa that it intended to invoke the 60-day out provision of the lease unless Krupa met certain conditions. (Def.'s 56.1(a)(3) Statement ¶ 21). Krupa did not meet the conditions outlined in the letter; and, on May 9, 2005, Leonardi invoked the 60-day out provision, notifying Krupa that the lease was terminated. (Id., ¶¶ 22-23). Krupa terminated its occupancy of the premises on August 31, 2005. (Id., ¶ 25).

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986) (*Celotex*). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*). However, a party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001).

Defendants argue that Mehta has no claims under all counts because he does not have a contractual relationship with the Defendants.

Section 1981 addresses racial discrimination in contractual relationships. *See* 42 U.S.C. § 1981; *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996) (*Morris*). Section 1982 addresses discrimination in property transactions. *See* 42 U.S.C. § 1981; *Morris*, 89 F.3d at 413. Both Sections 1981 and 1982 were derived from Section 1 of the Civil Rights Act of 1866 and are

3

construed in tandem. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 676 (1987); *Morris*, 89 F.3d at 413.

To establish a Section 1981 claim, a plaintiff must show that (1) he is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination related to one or more of the activities enumerated in the statute, *i.e.*, the making or enforcing of a contract. *See Morris*, 89 F.3d at 413. Similarly, to establish a Section 1982 claim, a plaintiff must show discrimination related to one or more of the activities enumerated in Section 1982, *i.e.*, the leasing and conveying of real or personal property. *See Morris*, 89 F.3d at 413-15. The requirement that the discrimination related to one or more of the activities of the statute requires that the plaintiff have his "own contractual relationship, not of someone else's." *Domino's Pizza, Inc. v. McDonald*, 126 S. Ct. 1246, 1252 (2006) ( *Domino's*). Consistent with fundamental corporation and agency law, a shareholder and contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts. Accordingly, a shareholder and contracting officer of a corporation cannot bring suit under Section 1981 (and, similarly, Section 1982 and general contract law). *See Domino's*, 126 S. Ct. at 1250-52; *Thomas v. National Canada Fin. Corp.*, 1995 WL 54473 (N.D. Ill. Feb. 7, 1995).

Here, only Krupa had a contractual relationship with Leonardi, not Mehta. Mehta attempts to distinguish the holding in *Domino's* that dooms his personal claims. First, he argues that because he personally guaranteed the lease, he has a sufficient contractual relationship to bring suit. However, Mehta did not personally guarantee the lease. The original lease was guaranteed and signed by Nisha Chotalia, the sole shareholder of Mira Grocery and previous tenant. Mehta did not sign any documents guaranteeing the lease. Furthermore, even if Mehta was the guarantor of the

4

corporate debt, that status does not result in a contractual relationship sufficient to create standing for breach of contract. *See Thomas v. National Canada Fin. Corp.*, 1995 WL 54473 (N.D. Ill. Feb. 7, 1995).

Second, Mehta argues that, as the sole shareholder, he was a real party in interest and the intended third-party beneficiary of the lease. This argument was specifically rejected by the *Domino's* case, in which the Court rejected the sole shareholder's argument that he had a sufficient contractual relationship because he negotiated, signed, performed, and sought to enforce the contract. The *Domino's* Court held that the corporate form and rules of agency denied the plaintiff shareholder rights under the contracts. *See Domino's*, 126 S. Ct. at 1251. Furthermore, Mehta has not pled that he was the third-party beneficiary of the lease; and allowing Mehta, as the sole shareholder of Krupa, to maintain his claim based on an alleged third-party beneficiary status would impermissibly allow Mehta to create a contractual relationship contrary to the corporate form and the rules of agency. *See Domino's*, 126 S. Ct. at 1251 (declining to determine whether a third-party beneficiary of a contract may have rights under Section 1981 but rejecting defendant's argument that he had a contractual relationship that was contrary to corporate form and rules of agency that protected him from personal liability).

Based on the above, Mehta did not have a contractual relationship with Defendants; accordingly, summary judgment is granted in Defendants' favor on all counts as to Mehta.

Defendants seek summary judgment on Counts I through III as to Krupa arguing that Krupa failed to present Defendants with a putative assignee who was ready, willing, and able to accept an

5

assignment of the Lease and Amendment Agreement. *See Toys "R" Us, Inc. v. NBD Trust Co. of Ill.*, 1995 WL 5691459 (N.D. Ill. Oct. 4, 1995) (to prove unreasonable consent to sublease, tenant must prove that it tendered a ready, willing, and able subtenant).

Based on the undisputed facts before the Court, genuine issues of material fact exist as to whether Patel was a ready and willing subtenant. Defendants contend that Patel was not ready and willing to accept an assignment of the Lease and Amendment Agreement because he could not recall seeing the Lease and Amendment Agreement; and he testified in his deposition that he would not have agreed to certain terms in the Amendment Agreement. However, Patel did sign an Asset Purchase Agreement and attempted to negotiate with the parties. Furthermore, Patel testified that, while he was not willing to accept a lease with the terms included in the Amendment Agreement, the Amendment Agreement was not part of the parties' negotiations. Drawing all reasonable inferences from the evidence in the light most favorable to Krupa, it cannot be said that no reasonable jury could return a verdict for the nonmoving party. Accordingly, summary judgment on Counts I through III as to Krupa is denied.

Defendants seek summary judgment as to Counts IV through VI, arguing that Krupa cannot show an impairment of a contractual relationship because Defendants properly terminated the Lease as provided in the Amendment Agreement. In other words, because the Lease was properly terminated by Defendants, there was no contractual right to extend the lease an additional five years. Therefore, Krupa's claims based on the failure to extend the Lease an additional five years fail. Krupa argues that its claims survive because Defendants did not properly terminate the Lease because (1) Defendants failed to give notice in accordance with the method of delivery specified in

the Amendment Agreement, (2) the notice was ineffective because it provided that Defendants would not cancel the Lease if Plaintiff made the required improvements, and (3) the referenced date in the notice was incorrect.

The Amendment Agreement provided that either party could cancel the Lease "by giving the other party sixty (60) days' written notice to start from the first month following delivery of said notice. Delivery may be by regular U.S. Mail or in person to the business office at . . . ." In a letter dated April 15, 2005, Defendants' counsel notified Krupa's counsel, via certified mail, that Krupa was in breach of the lease for its failure to repair and maintain the premises as required under the Lease. The letter identified multiple alleged repairs and maintenance items. The letter further allowed Krupa to make the required repairs and warned Krupa that if the repairs were not made within the provided sixty-day schedule, Defendants would immediately terminate the lease. Krupa and Donna Leonardi are carbon copied on the letter.

On April 29, Krupa's counsel responded on Plaintiffs' behalf to the April 15, 2005 letter, denying breach of the Lease. On May 9, 2005, Defendants' counsel responded to Krupa's counsel's April 29, 2005 letter, stating that, based on the April 29, 2005 letter, Krupa rejected Defendants' offer to remain in the Lease; therefore, the lease would terminate on June 18, 2005, "pursuant to the sixty days' notice Shreeji Krupa received on April 18, 2005." Krupa terminated its occupancy of the premises on August 31, 2005.

The undisputed facts demonstrate that Defendants complied with the notice requirements set forth in the Amendment Agreement. The Amendment Agreement provided that notice "*may* be by U.S. Mail or in person." The April 15, 2005 letter was delivered via certified mail and the

May 9, 2005 letter was faxed and sent via U.S. Mail. Furthermore, as demonstrated by the April 29, 2005 response by Plaintiffs' attorney, Plaintiffs received notice of the letter.

In addition, although the April 15, 2005 letter allowed for Krupa to remedy the alleged breaches, giving a tenant an opportunity to avoid termination does not negate the notice of termination. *See Bismarck Hotel Co. v. Sutherland*, 92 Ill. App. 3d 167, 173-74 (1980). Furthermore, the May 9, 2005 letter unequivocally notified Krupa that the Lease would be terminated.

Lastly, the error in the sixty-day computation did not negate the notice and was harmless as the Lease was not terminated until August 31, 2005, more than sixty days after the first of the month following the April 15, 2005 and May 9, 2005 letters.

Based on the above, summary judgment is granted on Counts IV through VI as to Krupa.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted in part and denied in part. Summary judgment is granted for Defendants on all counts as to Mehta. Summary judgment is granted for Defendants on Counts IV through VI as to Krupa, Inc.

Dated: 1-17-07

JOHN W. DARRAH
United States District Court Judge

8