# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

SHREEJI KRUPA, INC. and )
SHAURIN B. MEHTA, )
                                     )
        Plaintiffs, )
                                     )
    v. )   Case No. 04 C 7809
                                     )
LEONARDI ENTERPRISES and )   Judge John W. Darrah
DONNA J. LEONARDI, )
                                     )
        Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Shreeji Krupa, Inc. ("Krupa") and Shaurin B. Mehta, filed suit against Defendants, Leonardi Enterprises and Donna J. Leonardi. Plaintiffs alleged that Defendants violated 42 U.S.C. §§ 1981 and 1982 by refusing to consent to the assignment of the lease because Mehta and the new lessee was of dark skin and Indian ancestry (Counts I and II, respectively), breached Plaintiffs' right to assign the lease (Count III), violated 42 U.S.C. §§ 1981 and 1982 by refusing to extend the lease because of Mehta's race (Counts IV and V, respectively), and breached the option to extend the lease (Count VI). Subsequently, summary judgment was granted in Defendants' favor on all counts as to Mehta and on Counts IV and V as to both Plaintiffs.

On May 2, 2007, a jury returned a verdict on the remaining counts. The jury found for the Defendants on Count I (the discrimination claim) and for Krupa on Count III (the state-law breach of lease claim). The jury awarded Krupa $152,500 on Count III. Presently before the Court are Defendants' renewed motion for judgment as a matter of law or, in the alternative, for a new trial and Plaintiff's Bill of Costs.

A motion for judgment as a matter of law mirrors that involved in evaluating a summary judgment motion. *See Appelbaum v. Milwaukee Metro. Sewage Dist.*, 340 F.3d 573, 578-79 (7th Cir. 2003) (*Appelbaum*). The court looks to all of the evidence in the record and asks whether any reasonable jury could have found for the prevailing party. The evidentiary record is construed in the prevailing party's favor, drawing all reasonable inferences in that party's favor and resisting any temptation to weigh the evidence or have the court make its own credibility determinations. *See Appelbaum*, 340 F.3d at 579. Following a jury trial, the court must bear in mind that the question is not whether the jury believed "the right people" but only whether the jury was presented with a legally sufficient amount of evidence from which it could reasonably derive its verdict. *See Massey v. Blue Cross-Blue Shield of Ill.*, 226 F.3d 922, 924 (7th Cir. 2000) (*Massey*). Overturning a jury verdict is not something the courts may do lightly. *See Massey*, 226 F.3d at 925.

Krupa claimed that Defendants breached a lease because they unreasonably withheld their consent to the assignment of the lease to Alpesh Patal. The parties' agreed-upon jury instruction as to Count III stated:

> Plaintiff claims that the Defendants breached the store lease by unreasonably refusing to consent to the assignment of the store lease. To prove that the Defendants breached the written lease, Plaintiff must prove by a preponderance of the evidence (1) that Plaintiff tendered to the Defendants a prospective assignee who was ready, willing, and able to accept all of the terms of the written lease and (2) that Defendants unreasonably withheld their consent.
>
> If you find that Plaintiff has proved each of these things by a preponderance of the evidence, you should turn to the issue of Plaintiff's damages. If you find that Plaintiff has failed to prove either one of these things by a preponderance of the evidence, your verdict should be for Defendants.

Plaintiff's proffered subtenant and prospective assignee, Patel, testified at trial as follows. Patel learned that a mini-mart grocery store business was for sale through an advertisement in the newspaper. On Patel's first visit to the store to discuss the sale, Patel walked around the store and discussed the selling price of the store – $120,000 plus inventory.

Approximately a week later, Patel returned to the store and again discussed the price of the store – $120,000 plus inventory of approximately $40,000 to $50,000. Patel and Mehta also discussed that the store was leased from Leonardi Enterprises. Patel did not review documents at the store because he believed the sales were good based on his observations of customers' coming into the store during his two visits.

Mehta did show Patel two days of daily receipts of the store. Those daily receipts indicated that the store made approximately $1,000 a day. The fact that the store was making $1,000 a day was materially important to Patel's decision to purchase the store. Mehta represented to Patel that the $1,000 per day sales were the usual amounts of money the store made. In fact, in 2004, the gross receipts of the store were $74,156; and the store actually lost $28,909 in 2004. In the seven years that the store was in existence, it had actually lost a total of $191,000. Had Patel known this information, it "might have" affected his judgment about what price to offer for the store.

Patel could not recall if he actually saw the lease between Mehta and Defendants. Patel did recall seeing the lease extension and amendment agreement, which provided that: "Either party may cancel this lease by giving other party 60-days' written notice, to start from the first month of the following delivery of said notice." Patel would not be willing to spend $120,000 and enter into a business where the landlord could terminate the lease in sixty days.

The resulting contract between Patel and Mehta contained a condition that the "contract was subject to purchaser's review and approval of said Lease and assuming the present Lease or entering into a New Lease with the landlord." If the assignment or new lease was not obtained, Patel had the right to cancel the contract.

At some point, Patel went to Leonardi Enterprises' office and completed an application. In late August 2004, Patel received a letter from Defendants that asked Patel to get a contractor for estimates on repairs that Defendants believed were required for the store. Patel discussed the letter with Mehta, and Mehta agreed to help Patel with at least half of the expenses to make the estimated $35,000 in repairs.

On August 27, 2004, Mehta sent a response letter to Defendants, disputing the listed repairs in Defendants' previous letter. Mehta's response further requested that Defendants contact him so the parties could proceed with either a new lease or an assignment of the existing lease.

On September 2, 2004, Krupa sent Defendants an "Assignment of Lease" for the assignment of Krupa's lease to Patel. The Assignment of Lease was signed by Mehta, as President of Krupa. There was a signature line for Patel that was unsigned. The September 2 letter asked that the lease assignment be returned to Krupa by September 7, 2004. On September 7, 2004, Krupa sent a follow-up letter to Defendants regarding the lease assignment, indicating that he had not received the lease assignment from Defendants.

On September 10, 2004, Patel sent a letter to Defendant, Donna Leonardi, indicating that Patel would make the improvements set forth in the letter under certain conditions. These conditions included: (1) an abatement of three months' rent since the work will take that long to complete, (2) a new lease that assured a sufficient duration that the improvement costs could be recouped and

a maximum rent increase of not more than five percent if the option for additional terms were exercised, (3) exterior and cleanup will always be the landlord's responsibility, and (4) the lessee and lessor share the total cost of the improvements. The letter stated, "My undertaking is conditioned upon the execution of a new store lease containing the above terms and the completion of my purchase of the assets of the current lease." The letter asked for a response, in writing, by September 16, 2004. Patel testified that this letter indicated his willingness to enter into a new lease and not to an assignment of the lease that existed between Defendants and Mehta. On September 23, 2004, after not getting a response from Defendants, Patel canceled the contract with Mehta.

If a lease forbids a sublease or assignment without the landlord's consent, the landlord cannot unreasonably withhold his consent to a sublease. *See Golf Mgt. Co. v. Evening Tides Waterbeds, Inc.*, 213 Ill. App. 3d 355, 360 (1991) (*Golf Mgt.*); *Jack Frost Sales, Inc. v. Harris Trust & Savings Bank*, 104 Ill. App. 3d 933, 944 (1982) (*Jack Frost*). However, before a landlord can be liable for unreasonably failing to consent to a transfer of a lease, the tenant must meet his burden of proving that he tendered a ready, willing, and able subtenant. *See Golf Mgt.*, 213 Ill. App. 3d at 360-61 (the subtenant's desire for an option did not preclude jury from finding that subtenant was ready to take the lease, when there was testimony that subtenant wanted the property and was willing to negotiate for an extension of the lease and there was no evidence that an extension would not have been possible); *Jack Frost*, 104 Ill. App. 3d at 944.

Defendants argue that Krupa failed to prove that Krupa tendered a prospective assignee, Patel, who was ready and willing to accept all of the terms of the written lease.

Krupa presented evidence that Patel was willing and ready to purchase Krupa's store. Krupa also presented evidence that he attempted to negotiate with Defendants regarding Defendants'

5

"demand" that certain repairs be made. Krupa also presented Defendants with an "Assignment of Lease" for the subject property. However, Krupa failed to present any evidence that Patel offered to accept the assignment of lease at issue. The "Assignment of Lease" was not signed by Patel, and Patel's subsequent letter to Defendants specifically stated that Patel wanted a *new* store lease. Patel also testified that the letter indicated his willingness to enter into a *new* lease and not to accept an assignment of the existing lease at issue. Patel further testified that he would be unwilling to enter into a lease that contained the right of a party to cancel the lease with only sixty-days' notice – a provision in the existing lease at issue. While Krupa presented evidence that Patel was ready, willing and able to *purchase the store*, it failed to present *any* evidence that Patel was ready and willing to accept the assignment of the lease at issue in the case. *Cf. Gold Mgt.*, 213 Ill. App. 3d at 362 (subtenants were ready and willing, who testified that they wanted to sublease the space and were willing to negotiate with the lessor); *Jack Frost*, 104 Ill. App. 3d at 944 (lessee's agent's testimony that the purchasers were willing to fulfill the contract supports finding that there was an assignee ready to take the lease). Instead, as discussed above, the evidence was to the contrary – Patel wanted a new lease and would not have accepted at least one of the terms of the existing lease.

Based on the above, the jury was not presented with a legally sufficient amount of evidence from which it could have reasonably derived that Patel was ready and willing to accept the lease. Accordingly, Defendants' Motion for Judgment as a Matter of Law is granted. In light of this ruling, the Court need not address Defendants' remaining arguments. Furthermore, Plaintiff's Bill of Costs is moot.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment as a Matter of Law is granted. Judgment in Plaintiff's favor on Count III of Plaintiff's First Amended Complaint is vacated, and judgment is entered in Defendants' favor on Count III of Plaintiff's First Amended Complaint. Plaintiff's Bill of Costs is denied as moot.

Dated: August 15, 2007

JOHN W. DARRAH
United States District Court Judge